

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8333 | **DATE** | 6/10/2003 |
| **CASE TITLE** | David Cady vs. Cook County, Illinois, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum Opinion and Order. For all of the reasons stated, the Court grants both motions to dismiss and dismisses this action with prejudice. (10-1,8-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 1 1 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 JUN 10 PM 4:56 | date mailed notice | |
| TP | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID CADY, )
)
Plaintiff, )
)
) No. 02 C 8333
v. )
)
COOK COUNTY, ILLINOIS, *et al.* ) Judge John A. Nordberg  **DOCKETED**
)                                                JUN 1 1 2003
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Before the court are two motions to dismiss. For the reasons set forth below, both motions are granted and this case is dismissed with prejudice.

## PROCEDURAL HISTORY

Plaintiff Davy Cady, proceeding *pro se*,[1] filed this complaint on November 15, 2002 against the following defendants: Cook County, Illinois; Cook County Board of Commissioners; John H. Stroger, Jr., in his individual capacity; Gerald Nichols, Director of Intergovernmental Affairs, in his individual capacity; Bennie Martin, Executive Law Librarian, in his individual capacity; the City of Chicago; Mayor Richard Daley, in his individual capacity; the Public Building Commission of Chicago; and Eileen Carey, Executive Director of the Public Building

---

[1] Cady is an experienced *pro se* litigator. *See, e.g., Cady v. City of Chicago*, 2003 WL 21018245 (7th Cir. May 5, 2003) (unpublished order); *Cady v. Village of McCook*, 2003 WL 124184 (7th Cir. Dec. 16, 2002) (unpublished order); *Cady v. Miss Paige, Ltd.*, 2003 WL 1809468 (N.D. Ill. April 3, 2003); *Cady v. Sheahan*, 2003 WL 288472 (N.D. Ill. Feb. 7, 2003).

-1-



Commission, in her individual capacity. To date, plaintiff has served only four defendants who fall into two groups: (i) the City of Chicago and Mayor Daley (collectively, the "City") and (ii) the Public Building Commission of Chicago and Eileen Carey (collectively, "PBCC").

In early February, the City of Chicago and PBCC filed motions to dismiss based on separate grounds. An initial briefing schedule was set with plaintiff to file a response brief on March 24th. He did not file a response brief on the 24th but instead filed a motion for service relief. On March 27th, this Court granted that motion and re-set the briefing schedule on the motions to dismiss, with plaintiff to file a response brief on April 21st and the defendants to file their reply on May 12th. To date, plaintiff has not filed a response. On May 12th, the City filed its reply. PBCC has not filed a reply. This order addresses both motions to dismiss.

## FACTUAL BACKGROUND

The following facts are taken from the complaint and attached exhibits and are assumed to be true for purposes of ruling on the motions to dismiss.

Plaintiff was a "regular and appreciative" user of the Cook County Law Library (the "Library"), which is located in the Daley Center and administered by the Public Building Commission of Chicago (the "Public Building Commission"). (Cmplt. ¶¶ 1, 15.) For decades, plaintiff and other members of the public have had "free" and "unimpeded" access to the Library, "subject only to a metal detector search and, perhaps, good behavior." (*Id.*) Soon after the tragic events of September 11, 2001, the Public Building Commission instituted a new "photo identification" requirement for those seeking to use the building after-hours (weekday evenings and Saturday), which is when plaintiff normally used the library. (*Id.*)

This new security requirement was explained in a September 21, 2001 memo from MB Beitler, the building manager. The memo, which is attached to the complaint, was addressed to "All Visitors to the Richard J. Daley Center" regarding the "**NEW AFTER HOURS SIGN IN PROCEDURES**" and stated in full:

> Kindly be advised that effective Monday, September 24 at 6:00 p.m. new after hours sign in procedures will be in place.
>
> All non-employees requiring access to the building during non-working hours, from 6:00 p.m. to 8:00 a.m. during the week and all day Saturday and Sunday, will need to produce a photo identification in order to obtain entrance into the building. Our security personnel will inspect all identification and sign each visitor in. All visitors will be required to wear a "visitor" pass while they are in the building. It will also be required that each visitor sign out upon leaving the building.
>
> We appreciate your assistance and cooperation in these matters.

(Cmplt., Ex. A.)

In November 2001, plaintiff allegedly attempted to use the library and presented a U.S. passport as his I.D. (¶ 19.) At that time, the building manager was employing the services of Aargus Security Systems, Inc. A female guard working for Aargus (named MacMore) refused to accept plaintiff's passport as sufficient identification. (¶ 20.) She also refused to identify herself "upon request by plaintiff, by covering up her name tag." (¶ 21.) Plaintiff then asked to speak to MacMore's supervisor, and Sergeant Henderson was called. He also refused to identify MacMore to plaintiff. (¶ 22.) Plaintiff told Sgt. Henderson that he had a duty to identify the security guard. (¶ 23.) Sgt. Henderson responded that, unless plaintiff could produce a "better" I.D. than a U.S. passport, he would have to leave.

Plaintiff exited the secured area where he was standing and stood on the other side of the rope that separated the secure from the non-secure area of the Daley Center. He began to sketch MacMore's picture on a piece of paper so as to be able to remember what she looked like for a complaint that he had apparently already decided to file. (¶ 24.) Sgt. Henderson then told plaintiff that he was "creating a disturbance" by standing there silently sketching MacMore and commanded plaintiff to leave the non-secure area of the Daley Center, which plaintiff did under protest. (¶ 25.)

After this incident, plaintiff wrote a number letters to the various defendants complaining about this incident and about other alleged problems in the administration of the Library. These letters, which are attached to the complaint, fill in some important details that are missing or sketchy in the complaint. It is not necessary to summarize every letter. Plaintiff's exchange of letters with Eileen Carey, however, is worth recounting because it explains why the Library did not accept plaintiff's passport as a valid I.D.

On November 30, 2001, plaintiff wrote a letter to Carey, who is the executive director of the Public Building Commission, complaining about the photo ID requirement and also about the actions of MacMore and Henderson. The letter, which was written by plaintiff in his role as chairman of an organization called "Illinois Committee for Public and Private Accountability," states in pertinent part:

> It has come to our attention that your security guards have imposed a draconian, police-state-like regime upon the People who are entering the Daley Center in order to avail themselves, among other things, of the Cook County Law Library, which they regularly pay to support. Not only are these guards demanding to see I.D.s before admitting library patrons at certain times of the day, but they are refusing to accept American passports as sufficient I.D. They are also denying

access to the Cook County Law Library to Americans and residents of Cook
County who do not happen to have any I.D. on their persons.

(Cmplt. Ex. B.) Attached to the letter was three-page petition signed by non-attorney users of the Library, who also objected to the requirement of showing an I.D. and to the refusal to accept a U.S. passport as a valid I.D.

On January 24, 2002, legal counsel for the Public Building Commission responded to plaintiff's letter. This letter, attached to the complaint as Exhibit D, explains why the building manager imposed the new security requirement and why it will not accept a U.S. passport:

> Security procedures for the Daley Center that have been in effect since September 11, 2001, require all persons seeking entry to the building after 5:45 p.m. on weekdays and all day on Saturday to present a photo identification card that includes a current address. While an American passport is a valid form of identification for certain purposes, it does not include a current address which is required for after-hour admission to the building. All persons entering the Daley Center after business hours are required to produce either an employee identification card, a driver's license, or a state identification card with a current address.
>
> * * *
>
> It is our opinion that the security procedures enforced by the Daley Center in refusing after-hours admission to the Daley Center without a valid photo identification that includes a current address is reasonable in view of the heightened awareness of threats to the public safety following the events of September 11, 2001. The Commission does not intend to prevent any person who complies with established security procedures form using the Law Library. However, minimal guidelines can, and have been established to protect the safety and security of this public building and the persons who use it.

(Cmplt., Ex. D.) In his complaint, plaintiff does not take issue with any of the assertions in this letter. Specifically, he does not dispute that the policy as articulated in the letter was the policy applied in practice. He does not dispute that the reason the guards refused to accept his passport

was because it lacked a current address.[2] He also does not dispute that this policy was applied equally to all people seeking entrance after-hours. This latter point is further confirmed by the fact that plaintiff has alleged that other people (*i.e.* those signing his petition) were treated in the same manner as he was and had to comply with the same rules that he did.

The complaint contains a few other allegations not directly tied to the refusal to accept his passport. Pertinent to the City of Chicago's motion to dismiss, plaintiff makes only one allegation against the City. He alleges that, on February 2, 2002, he wrote a letter to Mayor Daley complaining about the photo I.D. requirement and about how he was treated by the two security guards. (Ex. F.) In his complaint, plaintiff alleges that he received no response from the Mayor. (¶ 30.) But it is clear from Exhibit I that the Mayor did respond to his letter by forwarding it to Eileen Carey. On March 11, 2002, Carey wrote a letter to plaintiff that was "a response to [his] recent letter to Mayor Richard M. Daley concerning the Law Library and its after-hours access." (Ex. I.) In this letter, she again explained the rationale behind new security requirement, pointing out that after-hours patrons were in the building "during times when the vast majority of offices and courtrooms are unattended." (*Id.*)

In addition to complaining about the new security requirement, plaintiff made a number of other complaints about the Library to Bennie Martin, John Stroger, and Gerald Nichols. (*See* letters attached as Exs. E, J, L, N.) Plaintiff's primary complaint is that the Library destroyed a number of books (apparently because they were out-of-date) and refused to make these books "available to the public on either a free or nominal cost basis, as is the custom of virtually all

---

[2]In his letter to Mayor Daley (Ex. F), plaintiff specifically states that the reason the Library refused to allow him to enter was because he did not have an identification "with a home address."

other public libraries in the USA" (¶ 31), thereby "requiring him to purchase them in order to have personal possession thereof" (¶ 36). He also complained about various other matters, including: (i) the Library's policy of lending out volumes to other libraries, thereby preventing plaintiff and other patrons from using them temporarily; (ii) the Library's failure to replace missing volumes, (iii) the Library's decision to stop subscribing to certain periodicals; (iv) the Library's failure to explain why there is a video camera above the front desk and its failure to advise plaintiff whether the Library is conducting any other video or audio surveillance of patrons; (v) the Library's failure to provide computers for use by the public; and (vi) the Library's failure to provide a working heavy duty stapler with enough staples. (¶ 36; Exs. E, J, L, N.) He alleges that these "concerns and complaints relative to many of the Library's polices remain ignored and completely unaddressed." (¶ 36.)

Plaintiff sums up his complaint by asserting that he should not have to "surrender his rights by . . . using some I.D. other than his U.S. Passport." (¶ 36.) He seeks a million dollars in compensatory damages plus $100,000 for the loss of potential future income that would have flowed from the legal information he would have obtained if he had been allowed entrance. (¶ 105.) The complaint contains fourteen parts, and appears to assert nine different causes of action, including constitutional and common law claims.

## LEGAL STANDARD

In considering a motion to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), this Court must take all facts pled by plaintiff as true and construe all inferences in his favor. *Thompson v. Ill. Dept. of Professional Regulation*, 300 F.3d 750, 753

(7th Cir. 2002). In doing so, the Court may look only at the pleadings, "which consist generally of the complaint, any exhibits attached thereto, and supporting briefs." *Id.*

In general, a plaintiff is not required to set forth all the facts needed to state a claim but merely needs to provide "a short and plain statement showing the plaintiff is entitled to relief, the purpose of which is to give the defendant notice of the claims and the grounds they rest upon." *Id.* At the same time, "[i]f the plaintiff chooses to provide additional facts, beyond the short and plain statement requirement, the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief." *Id.* at 753. This is sometimes referred to as a litigant pleading himself out of court. *See Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998). One way in which a litigant can plead himself out of court is "by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *In the Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992).

## DISCUSSION

Before the court are two separate motions to dismiss, one by the City and one by PBCC.

### I. The City's Motion To Dismiss.

The City's motion rests on a narrow ground. It first argues that the current complaint should be dismissed because plaintiff has failed to identify any conduct by the City that provides the basis for any cause of action. It then argues that the complaint should be dismissed *with prejudice* because, based on various public documents, it is clear that the City was not responsible for the administration of the Library. This Court agrees with both arguments.

First, the City is correct that the complaint contains no allegations that would support a claim. Plaintiff's complaint focuses on the new photo identification policy and various policies

of the Cook County Library. Yet it is clear from his complaint that plaintiff is alleging that the Public Building Commission – not the City – was responsible for administering the Library. *See, e.g.*, Cmplt. ¶ 15. Plaintiff further alleges that the Public Building Commission "instituted" the new photo I.D. requirement. (¶ 16.) In fact, the complaint, which is a lengthy 109 paragraphs, barely mentions the City. In short, the plaintiff has admitted in his complaint that the City was not the party responsible for the alleged wrongs that are central to his complaint.

The complaint does contain one paragraph (¶ 30) focused specifically on the City. This is the allegation that plaintiff wrote a letter of complaint to Mayor Daley on February 2, 2002 (Ex. F), and that he supposedly did not respond to the letter. This allegation fails because plaintiff has not pointed to any legal ground – nor could this Court or the City find any such ground – giving citizens a constitutional right to have their letters to the government answered. In any event, it is clear from plaintiff's own exhibits that this allegation is not true, as Mayor Daley did respond to plaintiff's letter, by forwarding it to Eileen Carey at the Public Building Commission who in turn wrote a response within reasonable time. (Ex. I.)

Second, the City argues that the complaint should be dismissed with prejudice because any amendment would be an exercise in futility given that the City does not own or operate the Public Building Commission, the Daley Center, Cook County, or the Cook County Library. In its brief, the City has attached various historical records (including local government ordinances and resolutions and 19th Century session laws) that document the fact that these entities are legally separate from the City. *See* City's Response at pp. 7-11; Exhibits 1-8.[3] For example, the

---

[3]This Court may take judicial notice of these facts without converting the motion to dismiss to a motion for summary judgment. *See generally Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Judicial notice of historical documents,

City has demonstrated as a matter of law that the Public Building Commission is an independent entity, with its own legal authority, that is legally separate from the City. In sum, this Court agrees with the City, finding no basis for how the plaintiff could ever state a claim under these facts. For this reason, the claims against the City are dismissed with prejudice.

## II.   PBCC's Motion To Dismiss.

PBCC moves to dismiss the complaint based on a broader argument, arguing that plaintiff's complaint fails to state a claim against any defendant. PBCC specifically argues that the defendants may properly require an identification with a home address from every person entering the Daley Center, including employees who work there; that defendants may properly require forms of identification commonly used, even though different from a U.S. passport, so long as the identification requirements are enforced in a non-discriminatory manner; and that plaintiff has no established right to refuse to identify himself in order to gain after-hours admission to the Library. This Court agrees with these arguments as explained below.

It is important to note at the outset what this case is not about. It does not concern any claim that plaintiff was singled out for some reason or that the security policy was applied selectively to, for example, people of a certain ethnicity. *See, e.g., Griffin v. Pinkerton's Inc.*, 173 F.3d 661, 663 (8th Cir. 1999) (plaintiff alleged that security guards at hospital where he worked waved by two white employees but then stopped plaintiff, who was black, and asked him for identification).[4] In fact, plaintiff has alleged just the opposite, submitting a signed petition

---

documents contained in the public record, and reports of administrative bodies is proper" in considering a motion to dismiss).

[4]Plaintiff's claims in *Griffin* were eventually dismissed on summary judgment.

from other individuals who were all treated the same way as plaintiff. The exhibits to the complaint make clear that the security policy applied to everyone except for employees.

This case also does not involve any claim that the security requirement was somehow pretextual or a cover for some other illicit motive. Plaintiff does not dispute that the photo requirement was implemented in good faith as a security measure in response to the events of 9/11. In fact, in one of his letters to Bennie Martin, plaintiff agreed with the general notion that security was "less-than-perfect" and should be *increased* to help combat the problem of missing legal volumes:

> Another inquiry concerns missing volumes that never get replaced. Would you please advise what your library's official policy is in this regard. For example, volume 58 of the Supreme Court Reporter and volume 1 of the U.S. Statutes at Large have been missing for as long as I have been coming to your library, which is over one year, but nothing ever seems to get done about them, though they have been reported missing on several occasions. Of course, this subject of attrition may be closely tied in with the less-than-perfect security at the library, and this is admittedly, a problem for all libraries, as I know from having once worked as a librarian at Northwestern University in Evanston. Still, I have - especially toward closing time, when all personnel are busy with closing the library - walked out with no one to check my bag. *This is a hole in library security that ought to be closed. If necessary, no one ought to be allowed to leave the library when a staffer is not there to check bags, in my opinion.*

(Cmplt. Ex. E; emphasis added.)[5] Plaintiff does not object to the other security measures imposed and agrees that the building manager may legitimately require those entering the building to walk through a metal detector and may remove them from the Library for bad behavior.

---

[5]This comment is ironic given plaintiff's current effort to prevent the Library from implementing the reasonable security measure of requiring an I.D. with a home address on it.

-11-

Plaintiff has not alleged that this requirement was intrusive or overly burdensome. It is hard to see how, especially after 9/11, this security requirement could be viewed as outside the mainstream. It is not an unusual to require an I.D. with a home address.[6] Plaintiff also has not provided any explanation for why he could not simply comply with this policy and present an I.D. such as a driver's license.[7]

Importantly, plaintiff has not alleged that the security requirement had the practical effect of denying him complete access to legal materials. First, the complaint and supporting exhibits state that this security requirement applies to after-hours and weekend access. It is therefore reasonable to assume that it does not apply during normal working hours. Plaintiff thus had the option of simply using the library during normal working hours in which case he would not have had to produce an I.D. with an address on it.[8] Second, plaintiff has specifically alleged in his complaint that he is able to get into "other City and County libraries" without having to comply with any similar requirement such as this one. (Cmplt. ¶ 43.) He thus had the option of using

---

[6] To get a library card at the Chicago public library, for example, a person has to show at least one ID with a home address on it. *See* "How to Get a Chicago Public Library Card," *http://www.chipublib.org*. Likewise, one must also provide documentation of a home address in order to get an Illinois driver's license. *See* "Driver's License: Documents Needed To Apply," *http://www.sos.state.il.us*.

[7] This Court takes note of the fact that plaintiff, in a previous case before this Court, alleged that he drove a car in the City of Chicago on at least several occasions. *See Cady v. City of Chicago*, No. 01 C 5151, Cmplt. ¶ 1. He therefore must have a driver's license, which is a form of identification that the Public Building Commission specifically stated would be acceptable. *See* Cmplt. Ex. D.

[8] Plaintiff has not alleged that he was unable to use the Library during normal working hours due to some impediment such as a job. In fact, based on allegations plaintiff made in a separate case pending before Judge Andersen, he was unemployed (or "underemployed") during the same time period that he was allegedly seeking to use the Library. *See Cady v. Miss Paige, Ltd.*, Case No. 02 C 4867, Cmplt. ¶¶ 18-22, 26.

these other libraries. Third, as noted above, he could have presented a driver's license and then used the Library after-hours. Fourth, plaintiff has specifically alleged in the complaint that he purchased some legal materials in order to do his research. Even though this option would require plaintiff to spend some money, it still shows that he had access to legal materials. It is thus apparent that, even with this requirement in place, plaintiff still had many options for obtaining legal materials.

To summarize, then, plaintiff is complaining about a minimally intrusive, non-discriminatory I.D. requirement that was implemented due to valid security concerns. Plaintiff has offered no legal ground – and neither PBCC nor this Court could find any – that would render this requirement unconstitutional.

In *Wright v. Lane County Commissioners*, 459 F.2d 1021 (9th Cir. 1972), the Ninth Circuit rejected a similar type of claim. A *pro se* litigant brought a suit against a county board and local bar association in Oregon, which operated a law library funded by part of the litigation filing fees. Under an Oregon statute, the county board was required to make the library "available at all reasonable times to the use of litigants." *Id.* at 1022. As a security precaution to prevent damage to the courthouse, the board decided to keep the library open from 8 a.m. until 5 p.m. on all days in which the courthouse was open for public business and not to keep it open to the public after hours. The plaintiff alleged that he worked during the day and that the board, bar association, and court all conspired to "deprive him of his right as a litigant to use the library after business hours." *Id.* The district court dismissed the complaint, and the Ninth Circuit affirmed on appeal, concluding that plaintiff failed to state a claim because the board has "a legitimate interest in the safety of its courthouse and personnel" and the order adopted was "a

reasonable attempt to achieve that goal." *Id.* at 1023. This rationale applies equally here as the I.D. requirement bears a rational relationship to the security concern of keeping the courthouse secure after hours in light of the concerns raised by 9/11.[9]

Plaintiff may be trying to fall within the line of cases holding that, under certain circumstances, prison officials must allow prisoners limited access to legal materials. *See generally Brooks v. Buscher*, 62 F.3d 176 (7th Cir. 1995). If so, he is misguided. This general rule was developed for prisoners who, unlike plaintiff, are restricted in their movements and therefore do not have the opportunity to conduct research on their own. And even then, there is no "general right to conduct legal research" and "prisoners do not have a constitutional right to browse in a law library." *See Buck v. Briley*, 2001 WL 619523, *4 (N.D. Ill. May 23, 2001). Instead, prisoners only have a right to "meaningful" access to courts, which has been construed to mean that they have a limited right to legal materials. *Brooks*, 62 F.3d at 179. In providing such access, however, the prison may, for security reasons, impose "strict time, place, and manner restrictions." *Id.* A prison may even impose "inconvenient and highly restrictive regulations" as long as they do not "completely" deny access to the courts. *Id.* Even accepting the dubious proposition that this case law somehow applies to non-prisoners, it would not provide plaintiff with any relief as the building manager clearly has the right to impose the type of reasonable security restriction imposed here.

---

[9] *See also Day v. Office of Cook County Sheriff*, 2001 WL 561362, *1-2 (N.D. Ill. May 21, 2001) (dismissing plaintiff's claim that he had the right, among other things, to visit and read in the law library in the Daley Center and could not be ejected from the building by Sheriffs who believed he was creating a disturbance), *aff'd Day v. Sorci*, 2002 WL 31006125 (7th Cir. 2002) (unpublished order).

Plaintiff's other complaints about Library administration – ranging from the failure to replace missing volumes to the failure to get a working heavy-duty stapler – are likewise non-meritorious and frivolous. The most concise explanation for why is the Seventh Circuit's general comment in *Lewis v. Sullivan*, 279 F.3d 526 (7th Cir. 2002). In *Lewis*, the Seventh Circuit considered the constitutionality of the "three-strikes" rule set forth in the 1996 Prison Litigation Reform Act, which states that a litigant who has a history of frivolous litigation may not be excused from prepaying the $150 filing fee. *Id.* at 527. In explaining why this rule was constitutional and did not violate the First Amendment right to petition for redress of grievances, the Seventh Circuit made the following apropos comment:

> Our reason is simple: there is no constitutional entitlement to subsidy. The right to publish a newspaper does not imply a right to governmental funding, or even to a library where people can read the papers for free. A woman's right to choose whether to have an abortion does not imply a right to have the government cover the medical costs. A right to education does not imply a right to free transportation to school. A right to petition for redress of grievances does not imply a right to free writing paper and stamps. [] The Supreme Court has never held that access to the courts must be free; it has concluded, rather, that reasonably adequate opportunities for access suffice.

*Id.* 528 (citations omitted). Similarly, plaintiff does not have a right to a free library, especially to one that is operated according to his own preferences and rules.

For all the above reasons, PBCC's motion is granted. This Court will dismiss the complaint with prejudice, even though some defendants have not yet been served and have not appeared, because it is clear that plaintiff cannot state a claim for relief under any set of facts consistent with the current complaint.

-15-

## CONCLUSION

For all of the reasons stated above, the Court grants both motions to dismiss and dismisses this action with prejudice.

**ENTER:**

JOHN A. NORDBERG
Senior United States District Court Judge

**DATED:** June 10, 2003